CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

02/14/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ANNETTE SIMMONS AND DEREK SIMMONS,<br><br>*Plaintiffs*,<br><br>v.<br><br>T.M. ASSOCIATES MANAGEMENT, INC.,<br><br>*Defendant*. | CASE NO. 3:17-cv-00066<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

In this housing discrimination case, a mother and son contend that an apartment complex illegally failed to accommodate the son's disability when considering his rental application. The son had a misdemeanor conviction for indecent exposure, and the apartment complex denied his application allegedly for that reason alone. The son then asserted his mental illness caused the act resulting in his conviction. On that basis and as a proposed reasonable accommodation for his disability, he and his mother asked the apartment complex to reconsider the application without reference to the conviction. The apartment complex declined, and this lawsuit resulted.

The apartment complex has moved to dismiss. Its theory is that the Fair Housing Act's (FHA) protections against disability discrimination categorically do not apply to those convicted of crimes. In other words, it posits that a housing provider may issue blanket denials of housing to those with convictions, regardless of an applicant's disability status, and even if the criminal conduct derived from the applicant's disability. This theory is mistaken. While the FHA does not always require accommodations for a conviction allegedly caused by a disability (and it indeed never requires an accommodation for those convicted of certain drug crimes), the facts alleged here fall into neither of those categories. Because the complaint states a claim for failure to accommodate under the FHA, the motion to dismiss will be denied.

## STANDARD OF REVIEW

To determine whether a complaint states a legal claim, the Court must accept as true all well-pled allegations, draw reasonable inferences in favor of the plaintiff, disregard the complaint's legal conclusions and arguments, and ensure the plaintiff offers more than a formulaic recitation of the elements. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## FACTS AS ALLEGED

Plaintiff Annette Simmons lives at Pine Ridge Apartments in Louisa, Virginia. (Complaint ¶ 1.1). Pine Ridge is managed by Defendant T.M. Associates Management, Inc. ("Defendant"). (*Id.* ¶ 1.2). In 2016, Ms. Simmons requested that her son, co-plaintiff Derek Simmons, join her apartment as a resident, but Pine Ridge denied his application in 2016 based on a misdemeanor conviction earlier that year. (*Id.* ¶¶ 1.2–1.3). The conviction stemmed from an incident where, due to a mental health condition known as schizoaffective disorder, Derek had removed his clothing in public. (*Id.* ¶¶ 1.3, 3.3). Specifically, during a period Derek was not on his medication, he undressed himself in the street and was arrested, charged, and pled guilty to indecent exposure. (*Id.* ¶ 3.4).

Derek subsequently received treatment for his condition at a psychiatric hospital and was released in October 2016. (Complaint ¶¶ 1.3–1.4). He continues to receive treatment and "has the ability to live successfully in a community environment." (*Id.* ¶ 1.4). He has not had any "similar incidents of erratic or disorderly behavior," nor is he likely to. (*Id.*).

In May 2017, Annette asked Pine Ridge to consider Derek's application "without regard to his misdemeanor conviction, as a reasonable accommodation for Derek's disability." (Complaint ¶ 1.5). Pine Ridge refused and stated that reasonable accommodations were not

available for Derek because he was not a tenant. (*Id*. ¶¶ 1.6, 3.6). The Simmonses allege that, but for the conviction, Derek's application would have been accepted. (*Id*. ¶ 1.7).

After his application was denied, Derek visited his mother's apartment and commonly stayed overnight there. (Complaint ¶ 1.8). In response, Pine Ridge issued a letter in June 2017 banning Derek from the property. (*Id*.). The Simmonses contend that Pine Ridge's refusal to consider Derek's application without his conviction is unlawful housing discrimination prohibited by both federal and state housing discrimination laws. (*Id*. ¶ 1.9). The parties have mentioned in passing but not briefed the state law issues, so this opinion addresses only the FHA.

## ANALYSIS

"The FHA, enacted pursuant to United States policy to provide for fair housing throughout the United States, makes it unlawful, *inter alia,* to discriminate in the sale or rental of housing or otherwise to make housing unavailable to a buyer or renter because of that buyer's or renter's handicap or the handicap of certain persons associated with the buyer or renter." *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 124 F.3d 597, 602–03 (4th Cir. 1997) (citing 42 U.S.C. §§ 3601, 3604(f)). The statute requires an accommodation for covered persons if the accommodation "is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Id*. at 603. A reasonable accommodation does not require "changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program." *Id*. at 604. The "necessary" element "has attributes of a causation requirement; it demands demonstration of a direct linkage between the proposed accommodation and the 'equal opportunity' to be provided." *Id*. The accommodation must provide "direct amelioration of a disability's effect." *Id*.

I.       **Asserted Grounds for Housing Denial and Refusal to Accommodate**

Defendant argues that Derek's conviction insulates it from any housing discrimination claim as a matter of law. The Court disagrees.

A.       **The law sometimes requires accommodating an applicant with convictions**

Defendant contends that protections of the FHA do not extend to criminal convictions, whatever their nexus to a claimant's disability. To support this argument, it relies on a case from the Eastern District of North Carolina, *Evans v. UDR Inc.*, 644 F. Supp. 2d 675 (2009), holding that the FHA does not require accommodations for disability-induced criminal actions. The Court finds *Evans* unpersuasive.

The plaintiff in *Evans* was denied housing because of a prior misdemeanor conviction for simple assault; the apartment had a policy reserving its right to deny applicants convicted of crimes posing a risk of injury to others. *Id*. at 678 & nn.4, 6. The plaintiff, like the plaintiffs here, retorted that the conviction "was a result of" the applicant's disabilities and unsuccessfully requested an exception to the policy as a reasonable accommodation. *Id*. at 678.

The district court concluded that accommodating one's criminal history is not the same as accommodating one's mental disability, because a criminal record "is not the sort of 'practical impact' of a disability" with which the FHA's prohibition on disability discrimination was concerned. *Evans*, 644 F. Supp. 2d at 684. Specifically, the court asserted that legislative history supported the conclusion that "the types of stereotypes Congress was concerned with" do not include "the criminal actions of people with mental disability where such disabilities are an underlying cause of a crime." *Id*. Thus, the court thought that:

> [w]here an individual suffers from a mental disability that is related to conduct that results in a criminal conviction, the casual connection between the mental disability and the criminal conviction is insufficient for purposes of the FHA to require a landlord to attempt an accommodation from a criminal history rental

policy based on that person's disability.

*Id.* at 685.

While *Evans'* conclusion supports Defendant's position, the Court does not find its reasoning persuasive. Its central discussion relies only on legislative history and an unsupported assertion that the "types of stereotypes Congress was concerned with [eliminating about those with disabilities] do not include concerns related to the criminal actions of people with mental disabilities where such disabilities are an underlying cause of the crime." *Evans*, 644 F. Supp. 2d at 684–85. But that runs headlong into Congress's effort to "repudiate[] the use of stereotypes and ignorance" and reliance on "[g]eneralized perceptions about disabilities and unfounded speculations about threats to safety." *Id*. at 684. Moreover, *Evans* proclaims that the FHA does not bar landlords from denying a disabled applicant based on a criminal record, *id.* at 681, but that abstract framing is a red herring—the issue is whether the landlord may do so when the *disability allegedly caused* the conviction. The court reasoned that "accommodating . . . criminal history is not equivalent to accommodating her mental disability," *id*. at 683–84, but the point here is that the two (allegedly) go hand-in-hand. Plaintiffs are not seeking an accommodation *of a conviction*, but rather an accommodation *of a disability* by mitigating its effects (*i.e.*, disregarding the conviction).

The text of the FHA undercuts Defendant's position and *Evans*. The FHA states that its protections do not apply to any decision denying housing because of an applicant's *drug distribution or drug manufacturing* conviction. 42 U.S.C. § 3607(b)(4). The interpretative canon of *expressio unius* provides that "when Congress includes one possibility in a statute, it excludes another by implication." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 392 (2013). Accordingly, the specific carveout for drug convictions provides a strong inference that Congress

"presumed the Act could sometimes require housing providers to overlook other types of criminal record to avoid having discriminatory effects on members of protected classes, such as people with disabilities." (Dkt. 10 at 18).

To backstop its ill-fated reliance on *Evans*, Defendant attempts to draw an analogy to a passing remark from the Eighth Circuit that the Americans with Disabilities Act "does not require employers to overlook infractions of the law." *Harris v. Polk Cnty.*, 103 F.3d 696, 697 (8th Cir. 1996). That statement, however, was overbroad and overstated the cases it relied on, which actually support the *expressio unius* argument highlighted above.

The relevant portion of *Harris* was *dicta*, and the cases cited by *Harris* recognized that "disability-caused misconduct" was categorically excluded from accommodation *only* where the statute expressly identified such misconduct for exclusion.

> [T]he *Harris* court proceeds to rely on [cases that] involve[] misconduct caused by alcohol and illegal drug use, for the sweeping proposition that employers are not required to "overlook infractions of [the] law," and that employers may hold disabled employees to the same standard of law-abiding conduct as all other employees. The *Harris* court, unlike the authority upon which it relies, does not make the distinction that while a disability is protected, disability-caused misconduct, in the context of alcoholism or illegal drug use, is not protected under the ADA.
>
> The decision in *Harris,* therefore, overlooks the critically important fact that the authority cited in support of the proposition that employers are not required to "overlook infractions of [the] law," . . . recognizes the dichotomy between a disability and disability-caused misconduct *only where* the disability is related to alcoholism or illegal drug use, *which are expressly unprotected* under the ADA.

*Walsted v. Woodbury Cnty.*, 113 F. Supp. 2d 1318, 1340 (N.D. Iowa 2000) (emphasis added and citations omitted).

As the Tenth Circuit explained in the ADA context, "because Congress only expressly permitted employers to hold illegal drug users and alcoholics to the same objective standards of

conduct as other employees even though their disability *causes* misconduct or poor performance, Congress implicitly" did not extend that employer prerogative to people whose disabilities caused non-drug- or alcohol-related misconduct. *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085–86 (10th Cir. 1997). Hence, the Tenth Circuit (like this Court's reasoning above) rebuffs a bright-line principle of nonaccommodation for people with disability-induced convictions or misconduct, except where Congress has identified a specific misdeed for nonaccommodation. Put differently, reasoned decisions from several courts in analogous cirucmstances reject an ironclad rule that a criminal conviction is a *per se* bar to protections afforded by disability anti-discrimination statutes.

B.     The "direct threat" exception

As a related but distinct argument, Defendant cites a portion of the FHA and its regulations stating that the statute does not require renting to people who would be a "direct threat" to the health and safety of others. 42 U.S.C. § 3604(f)(9); 24 C.F.R. 100.202(d); *see also Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272–73 (4th Cir. 2013) ("the potential for personal injury is a relevant consideration in examining whether a modification or accommodation request [is] reasonable"). Defendant asserts that a misdemeanor conviction for indecent exposure makes an applicant, *ipso facto*, a direct threat to health and safety. (Dkt. 4 at 1). The Court is unconvinced.[1]

For one, Plaintiffs identify 2004 legal guidance from HUD and the DOJ explaining that a

---

[1]     Although the Fourth Circuit has reserved the issue, *Scoggins*, 718 F.3d at 273 n.10, the Seventh and Eleventh Circuits view the "direct threat" provision as an affirmative defense, which is not typically appropriate for resolution on the pleadings. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1225 (11th Cir. 2016); *Dadian v. Village of Wilmette*, 269 F.3d 831, 840–41 (7th Cir. 2001). Because Defendant's reliance on that provision fails for other reasons, the Court does not decide whether § 3604(f)(9) is an affirmative defense not proper for adjudication at the pleading stage.

housing provider must make an individualized assessment to determine whether an applicant would pose a direct threat. That assessment must consider, *e.g.*, the nature of the risk of injury, its probability of occurrence, and ways to eliminate the threat.[2] (Dkt. 10-1 at ECF 5). The housing provider must also consider, "in evaluating a recent history of overt acts, whether the individual has received intervening treatment or medication that has eliminated the direct threat." (*Id.*).

Because HUD and the DOJ administer and enforce the FHA, 42 U.S.C. §§ 3608, 3612, 3614, their guidance on the direct threat exception is entitled to some deference. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399–401 (2008) (applying *Skidmore* deference in discrimination case to EEOC's policy statements "embodied in its compliance manual and internal directives"); *Ritter v. Cecil Cty. Office of Hous. & Cmty. Dev.*, 33 F.3d 323, 327–28 (4th Cir. 1994) (showing "some deference" to housing authority that interprets regulations under a federally created program); *Clark v. Alexander*, 85 F.3d 146, 152 (4th Cir. 1996) (same); *see also Purdham v. Fairfax Cty. Sch. Bd.*, 637 F.3d 421, 432 (4th Cir. 2011) (recognizing some deference to agency "opinion letters"); *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 245 (4th Cir. 2009) (deferring to "interpretive body best positioned to take account of the myriad factors involved in arriving at a reasonable construction of the complex regulatory scheme").

Nothing in the Complaint indicates that Defendant undertook an individualized inquiry of the circumstances surrounding Derek's conviction or his disability. What's more, the facts alleged prevent drawing the conclusion that Derek was a direct threat to others. Specifically, the

---

[2] This focus on an individualized inquiry is consistent with the Fourth Circuit's admonition that courts musts "undertake a fact-specific inquiry" in assessing reasonable accommodations under the FHA. *Scoggins*, 718 F.3d at 272.

Complaint asserts that Derek: (1) received treatment at a mental health hospital shortly after his offense; (2) he continues with treatment and can live successfully in a community environment; (3) has not had subsequent incidents of erratic behavior; and (4) his condition is "stabilized." (Complaint ¶¶ 1.3, 1.4, 3.7). Because these allegations must be credited for now, Derek's behavior undergirding his conviction has been mitigated by treatment such that he does not pose a direct threat to others.

Even if an individualized inquiry into Derek's post-conviction circumstances was not necessary, one can hardly assume from the bald fact of this particular conviction that he was a "direct threat to the health or safety" of others. 42 U.S.C. § 3604(f)(9); 24 C.F.R. 100.202(d). Indecent exposure in Virginia occurs when a person "intentionally makes an *obscene* display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present." Va. Code § 18.2-387 (emphasis added). "Obscene" means that which, "considered as a whole, has as its dominant theme or purpose an appeal to . . . a *shameful or morbid interest* in nudity, sexual conduct, sexual excitement, excretory functions or products thereof[,] sadomasochistic abuse," and which also lacks "serious literary, artistic, political or scientific value." Va. Code § 18.2-372 (emphasis added).

The offensiveness of indecent exposure should not be understated. But its definition reveals that, at bottom, it is a public morals crime, not one categorically presenting a direct threat to others' health and safety. *See Wicks v. City of Charlottesville*, 215 Va. 274, 276 & n.2 (Va. 1974). Indeed, "indecent exposure in a public place can occur even if no one in fact observes it—so long as it could have been observed had someone been looking." *Moses v. Virginia*, 43 Va. App. 565, 582 (Ct. App. Va. 2004) (Kelsey, J., dissenting) (collecting cases); *see Farhoumand v. Virginia*, 288 Va. 338, 347 (Va. 2014) (holding similarly regarding exposures

under Va. Code § 18.2-370). As Defendant's reply brief concedes, indecent exposure only entails the "potential[]" that there are bystanders who observe the unlawful act. (Dkt. 12 at 2). And it is not at all clear that, even when onlookers are present, their viewing of the indecent exposure necessarily and directly threatens their health or safety.

For all of these reasons, the Court finds that the direct threat exception does not apply at this point in the litigation.[3]

## II. Supposed Credit Issues

Defendant alternatively argues that it denied Derek's application because of an unfavorable credit check and that its denial on that basis shows that Plaintiffs have no disability discrimination claim. The Court cannot presently pass upon that argument.

First, the Complaint alleges that Derek is unaware of any reason (beside his conviction) for denial and that his application would be granted absent consideration of the conviction. (Complaint ¶ 1.7). This allegation must be credited for now.

Second, it is generally improper to consider factual matter outside the complaint at the motion to dismiss stage, at least without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[O]ur evaluation is thus generally limited to a review of the allegations of the complaint itself."). Because Defendant's argument relies on assertions outside the complaint—namely, a

---

[3] Defendant alludes briefly to a policy argument that it should not be forced to accept applicants with criminal records because it could be liable to other tenants for future harms caused by the would-be tenant. (Dkt. 4 at 7 (citing *Virginia v. Peterson*, 286 Va. 349 (Va. 2013)). But a landlord has a duty to warn only in the extreme case "where there was an imminent probability of injury from a third party criminal act," *Peterson*, 286 Va. at 357, which would easily satisfy the FHA's direct threat exception and thus bring the applicant-convict out from under the FHA's protections. Moreover, the implications of a state law standard of care cannot override the federal statutory scheme of nondiscrimination imposed on landlords. U.S. Const. art. VI, cl. 2.

letter allegedly stating its reasons for denying Derek's application—the default rule is that it should not be considered.

Third, although it is true that extrinsic documents can be considered if they are "integral" to a complaint and authentic, *Goines*, 822 F.3d at 166, Defendant's argument that the evidence can come in under this principle is misplaced. Defendant relies on Plaintiffs' supposed reference to the denial letter in paragraphs 1.3, 3.5, and 3.6 of the complaint. But those paragraphs do not mention, quote, or otherwise reference the letter or any other document; they generically allege only that the reason for Derek's denied application was his conviction. Defendant may very well have evidence contradicting that allegation, but that is a matter for discovery and summary judgment. For now, the Court must defer to facts set forth in the complaint.

## SUMMARY

Because the complaint states a failure to accommodate claim, the motion to dismiss will be denied. An appropriate order will issue. The Clerk of Court is requested to send a copy of this opinion and the accompanying order to counsel of record.

Entered on this __14th__ day of February, 2018.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE